1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

10

          Plaintiff,

11

    v.

12

TELECARE MENTAL HEALTH
SERVICES OF WASHINGTON, INC.,

13

          Defendant.

14
15
16

No.  2:21-cv-01339-BJR

**ORDER (1) GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT; AND
(2) DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT**

17

## I.      INTRODUCTION

18

      This matter comes before the Court on (1) a Motion for Summary Judgment filed by

19

Defendant Telecare Mental Health Services of Washington, Inc. ("Telecare"); and (2) a Motion

20

for Partial Summary Judgment filed by Plaintiff Equal Employment Opportunity Commission

21

("EEOC"). EEOC filed this lawsuit on behalf of Claimant Jason Hautala, claiming Telecare

22

violated the Americans with Disabilities Act ("ADA"), having denied Hautala employment on the

23

basis of his leg impairment. The Court has now reviewed the briefs filed in support of and

24

opposition to both motions, including supplemental briefing on the issue of whether Claimant was

25
26

ORDER - 1

a "qualified individual with a disability" at the time Telecare rescinded its conditional offer of employment, and finds and rules as follows.

## II.     BACKGROUND

In 2019, Claimant Jason Hautala applied for a position as a registered nurse with Telecare's Short-Term Evaluation & Treatment Center in Shelton, Washington. The Shelton facility provides mental health emergency care and "specializes in rehabilitation and recovery for adult residents who have been involuntarily committed due to having a chronic or serious mental health disorder and are experiencing acute mental health crises." Decl. Tyvonne Berring, ¶ 7. "An RN at Shelton provides acute inpatient services such as providing direct care in patient rooms, administering medications, and performing CPR and physical restraints of violent and assaultive clients when the need arises." Def.'s Mot. at 2 (citing Nam Decl. ¶ 3, Ex. A, Wilcox Dep. 56:12-23, 140:14-21; ¶ 4, Ex. B, Hautala Dep. 119:15-19.). Patients can become "very violent and the violence can be unprovoked and … out of the blue," and the RN position "is a very physical job," requiring nurses who are trained in and able to perform crisis intervention techniques. Nam Decl. ¶ 5, Ex. C, Broadbent Dep. 44:22-45:3; Wilcox Dep. 122:13-21.

Based on Hautala's resume and an interview, Telecare extended an offer of employment, conditioned on a physical examination to determine his fitness for the position. Nam Decl. ¶ 6, Ex. D, Berring Dep. 95:8-11. To complete this exam, Hautala saw physician assistant Devon Rutherford, who concluded that Hautala was "able to fulfill requirements although requires assistance with long periods of standing/walking." (Nam Decl. ¶ 18, Ex. P, Rutherford Exam Results). The reference to limitations on standing and walking was to Hautala's permanent leg impairment, stemming from a severe injury sustained in a motorcycle accident in August 2018. Nam Decl. ¶ 4, Ex. B, Hautala Dep. 60:23-25. Based on Rutherford's report, Telecare requested

ORDER - 2

additional information from Hautala's primary care physician, Dr. Andrew Patel. Patel signed a form, provided by Telecare and filled in by Hautala, that stated Hautala was "unable to stand for prolonged periods of time" and "unable to run or jog," and that "getting up from a squat is difficult." Nam Decl., Ex. R., Medical Information Form.

In December 2019, Telecare rescinded its conditional offer, based on information obtained during the post-offer exams. Telecare explained it had concluded that Hautala's "permanent work restrictions" precluded him "from performing all of the essential functions of the position, and there is no reasonable accommodation" it could provide to enable him to perform those functions. Nam Decl., Ex. Z, letter from A. Short. Telecare went on to explain that the "restrictions" specifically included Hautala's inability "to stand for prolonged periods or walk for 'moderate' distances," "to run or jog," and "to get down on the floor to render emergency patient care" or "get[] up from a squat" without difficulty. The letter reflected Telecare's understanding that given these restrictions, Hautala would not be able to "run away from or participate in a take-down if a client became violent." *Id*.

Based on Telecare's rescission of its offer, Hautala filed a charge of discrimination with the EEOC. Compl. ¶ 7. After determining that there was reasonable cause to believe that Telecare had violated Title I of the ADA, the EEOC filed the instant action.

## III.    DISCUSSION

### A.  Summary Judgment Standard

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

ORDER - 3

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If ... [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.*

**B. Defendant's Motion for Summary Judgment**

Defendant argues that EEOC has failed to demonstrate material issues of fact on several elements of its claims. For the reasons that follow, the Court agrees that EEOC has failed to meet its burden of demonstrating a prima facie case of disability discrimination under the ADA.

*1. EEOC Bears the Burden of Establishing Prima Facie Case*

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to" hiring or other privileges of employment. 42 U.S.C. § 12112(a). The plain language of the statute thus protects only "qualified individuals" from employment disability discrimination. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1112 (9th Cir. 2000). Accordingly, the EEOC carries the initial burden of establishing that Hautala is a qualified individual as part of his prima facie disability discrimination case. *See Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127 (9th Cir. 2020) (citing *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (en banc) ("[U]nder the ADA, an employee bears the ultimate burden of proving that [she] is ... a qualified individual with a disability.") (internal quotation marks omitted)).

ORDER - 4

In the Ninth Circuit, "[[q]ualification for a position is a two-step inquiry. The court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Bates*, 511 F.3d at 990. As noted, the burden of proof lies with the plaintiff. *Id*. ("As the plaintiff, Bates bears the burden to prove that he is 'qualified.'"). Telecare argues that EEOC has failed to demonstrate that Hautala satisfies either prong of the inquiry. Because the Court concludes that EEOC has not demonstrated Hautala satisfied all the prerequisites of the RN position—the first prong—it does not reach the second—whether he could perform all essential functions of the job, with or without reasonable accommodation. *See Anthony*, 955 F.3d at 1134 (employer is obligated to provide reasonable accommodation "only if the individual is 'otherwise qualified.'").

> 2. *Whether Claimant Satisfied Requisite Skills and "Other Job-Related Requirements" of the Position*

Telecare does not deny that Hautala had the "requisite skill, experience, and education" necessary for the RN position. It argues, however, that Plaintiff lacked another essential job-related requirement: a demonstrated compassion for patients who suffer from mental illness, such as those being treated at the Shelton facility. In support of this position, Telecare cites statements Hautala undisputedly made, including that "[i]n my youth, I used to enjoy a good crazy person takedown, but as I got older, I enjoy these things less and less." Nam Decl. ¶ 4, Ex. B, Hautala Dep. 112:1-10. Hautala also posted a comment on social media that "[F]ighting off meth heads isn't as much fun in my 50s as it was in my 30s." (Nam Decl. ¶ 31, Ex. CC, Hautala Dep. Vol. II 260:10-23).[1]

---

[1] The Court has not been provided the actual documents containing these statements. However, Hautala admitted to them in deposition, and does not deny now that he made them, or claim they have been taken out of context.

ORDER - 5

Telecare asserts, and EEOC does not dispute, that having a "compassionate view" towards mentally ill patients in crisis is a "job-related requirement" of the RN position at issue. In support, Telecare submitted its "Job Description" for the position, which lists as the very first of several "Essential Functions" of the job, "Demonstrates the Telecare mission, purpose, values, and beliefs in everyday language and contact with the internal and external stakeholders." Nam Decl., Ex. F. In determining whether an individual is qualified for a job, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Telecare submitted additional evidence of the "employer's judgment" regarding the necessary compassion towards mentally ill patients. Tyvonne Berring, who is now Telecare's Regional Director of Operations and was at the time of Hautala's application Telecare's Start-Up Project Administrator charged with hiring Shelton's nursing staff, submitted a declaration stating without equivocation that "Telecare would not hire anyone for an RN position who referred to Telecare patients as 'crazy' or 'meth heads.' These derogatory terms run counter to Telecare's core values and mission that center on patient resilience and respect, and its philosophy focusing on recovery." Berring Decl., ¶ 17. In light of this evidence, and in the total absence of dispute from EEOC, the Court concludes that having a compassionate view of mental health patients is a necessary qualification for performing the RN position at the Shelton facility.

In addition, Hautala's comments referencing "a good crazy person takedown" and "fighting off meth heads" support a finding that Hautala lacked this requisite compassionate view of mentally ill patients necessary to perform the position at issue. Again, EEOC has failed to offer evidence or argument to the contrary, essentially conceding that Hautala's comments demonstrate

ORDER - 6

he lacks the requisite compassionate view of Telecare's patients, rendering him unqualified for the job. Instead, EEOC makes three arguments, all of which miss the mark.

First, EEOC argues that because the comments were discovered only after Telecare had denied Hautala the job, they cannot, as "after-acquired" evidence, be used to excuse what EEOC claims was Telecare's discriminatory conduct. In so arguing, EEOC misconstrues the Supreme Court precedent on which it relies, and overlooks Ninth Circuit caselaw distinguishing that precedent on precisely the grounds presented here. *See* Pl.'s Supp. Resp. at 4 (citing *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 360 (1995)). In *McKennon*, the Supreme Court held that an employer cannot use "after-acquired evidence of wrongdoing to assert that the plaintiff would have been fired anyway and to excuse its discriminatory conduct." *Anthony*, 955 F.3d at 1130 (citing *McKennon*, 513 U.S. at 355–56). But the claim at issue in *McKennon* was brought under the Age Discrimination in Employment Act (ADEA), which unlike the ADA does not limit its protection against discrimination to a "qualified individual." *Id. (comparing* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against *a qualified individual* on the basis of disability.") *with* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer ... to ... discriminate against *any individual.*") (emphasis added)). The *McKennon* employer was attempting to use the after-acquired evidence to "provide a retroactive, legitimate justification for the employee's admittedly discriminatory discharge." *Id*. Here, however, Telecare is offering the after-acquired evidence to "rebut the plaintiff's prima facie case" that Hautala was a "qualified individual" under the ADA. This is precisely the use of after-acquired evidence that the Ninth Circuit has recognized is allowed, despite the holding in *McKennon*. *See Anthony* at 1131 ("[A]fter-acquired evidence remains available for other purposes, including to show that an individual is not qualified under the ADA.") (holding employer may use evidence obtained in discovery demonstrating plaintiff

was not "qualified individual."). A prohibition on after-acquired evidence as proposed by the EEOC could have the incongruous effect of requiring employers to hire unqualified applicants, a result Congress clearly did not intend, as evidence by the plain language of the statute.

Second, EEOC argues that Telecare *believed* at the time of the job offer that Hautala had all of the requisite "non-medical qualifications for the RN position, including whether he had 'the necessary compassionate view of patients.'" Pl.'s Supp. Resp. at 2. EEOC cites Hautala's employment references as evidence that in previous positions, Hautala was "[v]ery well-liked by staff, physicians, patients and families[,]" and was "very pleasant[, and] very capable of handling stressful situations/volatile climates[.]" Hitzel Decl, ¶3, Ex. A. But "an employer's subjective knowledge has no bearing on the 'skill, experience, education and other job-related [qualifications]' that a person in fact possesses," *Anthony*, 955 F.3d at 1129 (citing 29 C.F.R. § 1630.2(m)), and these comments do not cast doubt on Telecare's claim that had it known that Hautala referred so callously to mentally ill patients, it would not have offered him the position.[2] *See* Berring Decl., ¶ 16 ("Had Hautala discussed how he enjoyed takedowns of patients or referred to clients as "crazy" in his interview with me, I would not have approved his application for further consideration for hire as an RN to work at Shelton.").

Finally, EEOC argues that allowing after-acquired evidence would cause it undue prejudice, as Telecare voluntarily dismissed its after-acquired evidence affirmative defense early on in litigation. But Telecare is not submitting the evidence as an affirmative defense to justify

---

[2] The Court acknowledges that one should not be surprised to hear individuals speaking about their job, in a casual conversation, in an informal or even callous manner that they would not use in a professional setting. However, Hautala apparently made at least one comment at issue in a professional setting—that is, in a communication with the EEOC about his discrimination claim. Furthermore, EEOC has not argued that this distinction should make a difference, while Telecare has explicitly stated that regardless of setting, talking about mentally ill patients in this manner disqualified Hautala for the job.

ORDER - 8

discriminating against a qualified individual; it is arguing that the evidence demonstrates Hautala was not qualified to begin with, a critical distinction which seems to evade the EEOC. *See Anthony*, 955 F.3d at 1131 (highlighting "distinction between the use of after-acquired evidence to negate an element of a plaintiff's prima facie case," which is allowed; and "its use to establish a nondiscriminatory motive for the adverse employment action," which is not).

Thus it remains undisputed that Hautala's comments disqualify him for the position of RN at Telecare's Shelton facility at the first step of the Ninth Circuit's test for a "qualified individual." As a consequence, the Court necessarily concludes that the EEOC has failed to make out a prima facie case that Hautala was a "qualified individual" entitled to protection under the ADA, and its claims must be dismissed.

## IV.   CONCLUSION

Because EEOC has failed to demonstrate Hautala was a "qualified individual" under the ADA, the Court need not determine whether disputes of fact remain as to whether he was able to perform the essential functions of the RN position, with or without reasonable accommodation. *Anthony*, 955 F.3d at 1134. Defendant's Motion for Summary Judgment is therefore GRANTED and this case is DISMISSED. EEOC's Motion for Partial Summary Judgment, seeking dismissal of two of Telecare's affirmative defenses, is DENIED as moot.

SO ORDERED.

Dated:  June 12, 2023.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 9