1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  EQUAL EMPLOYMENT OPPORTUNITY
   COMMISSION,

                        Plaintiff,

        v.

   TELECARE MENTAL HEALTH
   SERVICES OF WASHINGTON, INC.,

                        Defendant.

No.  2:21-cv-01339-BJR

**ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION**

## I.     INTRODUCTION

This matter comes before the Court on a Motion for Reconsideration filed by Plaintiff

Equal Employment Opportunity Commission ("EEOC"), seeking reconsideration of the Order

Granting Defendant's Motion for Summary Judgment ("MSJ Order"). Dkt. No. 91. In that MSJ

Order, the Court found that Plaintiff had failed to allege facts sufficient to support its *prima facie*

claim of discrimination under the Americans with Disabilities Act ("ADA") against Defendant

Telecare Mental Health Services ("Telecare"). More specifically, the Court found that Plaintiff

had failed to demonstrate that claimant Jason Hautala was a "qualified individual" for the nursing

position he had applied for, based on certain statements he later made to EEOC and others.

ORDER GRANTING MOTION FOR RECONSIDERATION - 1

According to Telecare, those statements revealed an attitude towards the mentally ill that was unacceptable given the requirements of the position Hautala sought.

Having reviewed the briefs filed in support of and in opposition to the Motion for Reconsideration, the relevant authority, and the underlying Motions for Summary Judgment, the Court concludes that reconsideration is appropriate for the reasons that follow.

## II.    BACKGROUND

In 2019, Claimant Jason Hautala applied for a position as a registered nurse with Telecare's Short-Term Evaluation & Treatment Center in Shelton, Washington. The Shelton facility provides mental health emergency care and "specializes in rehabilitation and recovery for adult residents who have been involuntarily committed due to having a chronic or serious mental health disorder and are experiencing acute mental health crises." Decl. of Tyvonne Berring, Dkt. No. 63-3, ¶ 7. Telecare extended an offer of employment, conditioned on a physical examination to determine his fitness for the position. Decl. of Yoon-Woo Nam, Dkt. No. 63-1, ¶ 6, Ex. D, Berring Dep. 95:8-11. However, Telecare ultimately rescinded its conditional offer, based on a permanent leg injury from which Hautala suffers, which Telecare determined rendered him unable to perform the basic functions of the RN position. This ADA discrimination lawsuit followed.

Both parties moved for summary judgment. The Court granted Defendant's motion, concluding that Plaintiff had failed to make out an element of its *prima facie* case: that Hautala was a "qualified individual" under the ADA. *See* MSJ Order at 4 ("The plain language of the [ADA] statute thus protects only "qualified individuals" from employment disability discrimination. . . . Accordingly, the EEOC carries the initial burden of establishing that Hautala is a qualified individual as part of his *prima facie* disability discrimination case.") (citations omitted). The holding was based on statements Hautala apparently made that Telecare argued

ORDER GRANTING MOTION FOR RECONSIDERATION - 2

revealed an unacceptably callous attitude towards the mentally ill, a constituency Hautala would have been tasked with caring for had he been hired. The statements Hautala made included that "in my youth, I used to enjoy a good crazy person takedown, but as I got older, I enjoy these things less and less," and "fighting off meth heads isn't as much fun in my 50s as it was in my 30s." Nam Decl. ¶ 4, Ex. B, Hautala Dep. 112:1- 10; Nam Decl. ¶ 31, Ex. CC, Hautala Dep. Vol. II 260:10-23. In support of its position, Telecare submitted evidence that a demonstrated compassion for patients suffering from mental illness and substance abuse disorder was an essential qualification of the job; the "Job Description" for the position listed as the very first of several "Essential Functions" of the job "Demonstrates the Telecare mission, purpose, values, and beliefs in everyday language and contact with the internal and external stakeholders." Nam Decl., Ex. F. Telecare also submitted testimony of Tyvonne Berring, the person charged with hiring decisions, stating that "Telecare would not hire anyone for an RN position who referred to Telecare patients as 'crazy' or 'meth heads.' These derogatory terms run counter to Telecare's core values and mission that center on patient resilience and respect, and its philosophy focusing on recovery." Berring Decl., ¶ 17.

EEOC failed to address this argument in its opposition to Telecare's motion. It neither attempted to raise an issue of fact (*e.g.* by denying that Hautala had made the comments, or by disputing Telecare's claim that capacity for compassion was a necessary qualification), nor provided legal authority that would justify disregarding the comments. EEOC's sole reference to Telecare's argument that Hautala lacked this qualification was buried in one of its opposition brief's many footnotes, and substantively missed the mark, characterizing the argument as an "eleventh hour justification" for refusing to hire Hautala, rather than addressing the question

ORDER GRANTING MOTION FOR RECONSIDERATION - 3

Telecare had raised, of whether Hautala had met his burden of demonstrating he was a "qualified individual" entitled to bring a claim under the ADA. *See* EEOC Opp. at p. 21, n. 12.

Noting that the EEOC had "failed to respond to this argument," the Court provided it with another opportunity to address the issue. Minute Order, Dkt. No. 83. In calling for supplemental briefing, the Court observed that Defendant "argues, among other grounds for dismissal, that Claimant Jason Hautala has made several 'troubling, inappropriate statements about mentally ill patients,' establishing that he was not a 'qualified individual' for the position under the ADA." *Id*. The Court explicitly cited Defendant's evidence "that it 'would not hire anyone for an RN position who referred to Telecare patients' in such a way" and authorized EEOC to submit additional argument and authority in opposition. *Id*., citations omitted. Despite this second opportunity, however, EEOC again failed to argue or provide evidence disputing that Hautala's comments were disqualifying at the *prima facie* stage of the ADA claim, instead arguing again (without merit) that the comments, as after-acquired evidence, could not be considered as *post hoc* justification for Telecare's failure to hire him, an argument Telecare had not made.

The Court subsequently granted Defendant's motion for summary judgment based on the undisputed evidence Telecare provided that (1) Hautala had made the comments; (2) that compassion for patients suffering from mental illness was a necessary qualification for the job; and that (3) the comments conclusively demonstrated a lack of such compassion. The Court also concluded that the EEOC had failed to provide argument or evidence disputing Telecare's claim that it would not have offered Hautala the job had it known he had made the comments at issue.

EEOC timely filed the instant Motion for Reconsideration, finally providing evidence and argument for why Hautala's comments do not entitle Telecare to summary judgment.

ORDER GRANTING MOTION FOR RECONSIDERATION - 4

## III.   DISCUSSION

### A.  Standard on Motion for Reconsideration

Western District of Washington Local Rule 7(h) provides "Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." The term "manifest error" means "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed. 2009). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Whether or not to grant reconsideration is committed to the sound discretion of the court. *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

### B.  Whether Reconsideration Is Appropriate to Correct Manifest Error

Plaintiff claims that reconsideration is necessary to correct a "manifest error in the prior ruling." The motion is based on two distinct arguments. First, Plaintiff argues that the Court committed error in considering a "subjective" job qualification at the summary judgment stage, beyond the mere "objective" qualifications (such as education and experience), which Hautala undisputedly possessed. Second, Plaintiff claims that the Court overlooked genuine disputes of material fact as to whether Telecare would have actually found Hautala's comments disqualifying. The Court addresses each argument in turn.

First, Plaintiff argues, the Ninth Circuit has held that on summary judgment, a court should inquire only into an ADA claimant's objective qualifications, leaving the subjective

qualifications—for example, in this case, a demonstrated compassion towards the mentally ill—for later stages of inquiry. In *Lynn v. Regents of the University of California*, the Ninth Circuit reversed summary judgment dismissal of discrimination claims brought by a university professor, finding she had demonstrated that she met the "objective criteria for tenure," based on "evidence that she had the same education, experience and number of published works as others who had been granted tenure." 656 F.2d 1337, 1342 (9th Cir. 1981). It was "preferable" to consider her allegedly "deficient scholarship," which was the university's purported reason for denying her tenure, at a later stage of the case. Referring to the several steps in the *McDonnell Douglas*[1] inquiry, the court observed, "[i]n our view, objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process." *Id*. at 1344. The Ninth Circuit later observed in *Nicholson v. Hyannis Air Services, Inc.*, citing *Lynn*, that "[t]his court has long held that subjective criteria should not be considered in determining whether a plaintiff is 'qualified' for purposes of establishing a prima facie case under *McDonnell Douglas.* Instead, '[t]he qualifications that are most appropriately considered at step one [of *McDonnell Douglas*] are those to which objective criteria can be applied.'" *Nicholson*

---

[1] In *McDonnell Douglas*, the Supreme Court laid out the process for analyzing a discrimination claim (in that case, under Title VII): "(1) the plaintiff must come forward with evidence sufficient to constitute a *prima facie* case of discrimination; (2) the defendant must then "articulate" a legitimate non-discriminatory reason for the adverse employment decision; and (3) the plaintiff must then be given the opportunity to show that the "assigned reason" was "a pretext or discriminatory in its application." *Lynn*, 656 F.2d at 1341 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). *McDonnell Douglas* is typically (although not necessarily) applied in ADA cases, in which a plaintiff must make out a *prima facie* case—step one of the test—by showing that he or she (1) has a disability; (2) is qualified for the position sought, with or without reasonable accommodation; (3) was not provided the benefits of employment based upon that disability. *See Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1246 (9th Cir. 1999) (citing *Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir.1996)).

ORDER GRANTING MOTION FOR RECONSIDERATION - 6

*v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009) (quoting *Lynn*, 656 F.2d 1337, 1345 n. 8).

Despite the apparent breadth of these pronouncements, the Court is not persuaded that evidence of Hautala's lack of compassion for individuals with mental and substance abuse illness cannot be considered as part of Plaintiff's *prima facie* case on summary judgment. First of all, the *McDonnell Douglas* multistep burden-shifting framework does not apply to the facts of this case, since Telecare frankly admits that it did not hire Hautala based upon his disability. *See* Nam Decl., Ex. Z (letter from Telecare rescinding job offer, citing Hautala's "permanent work restrictions" that precluded him "from performing all of the essential functions of the position."); *see Harshbarger v. Sierra Pac. Co.*, 26 F. App'x 707, 711 (9th Cir. 2002) ("Where the employer acknowledges that it relied upon the terminated employee's disability as its stated reason for the termination, *McDonnell–Douglas* burden shifting does not apply.") (citing *Mustafa v. Clark County School Dist.,* 157 F.3d 1169, 1175–76 (9th Cir.1998)). Thus the Ninth Circuit's concern in *Lynn* and *Nicholson*—that allowing consideration of subjective criteria as part of plaintiff's *prima facie* case "would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved," thereby "defeat[ing] the purpose underlying the *McDonnell Douglas* process"—is not implicated here. *Lynn*, 656 F.2d at 1344.

Perhaps more importantly, the "subjective" qualifications at issue in *Lynn* and *Nicholson* were not just nuanced; they were hotly debated, making them particularly unsuitable for summary judgment. *See Nicholson,* 580 F.3d at 1124 ("[T]he subjective nature of Nicholson's alleged deficiencies is most apparent from the fact that an instructor at Flight Safety rated her CRM [crew resource management] skills "excellent" in June 2004, while her Cape Air co-pilots claimed only two months later that CRM deficiencies made her unsafe to fly."); *Lynn*, 656 F.2d at 1343–45

ORDER GRANTING MOTION FOR RECONSIDERATION - 7

("[T]he University's evaluation of Lynn's scholarship was due, in part, to its view that women's studies is not a substantial topic for scholarly work . . . [A]ddressing the University's arguments at the first step of the analysis would increase the possibility that courts will be required to engage in evaluations of the performance of faculty members, a task to which others are better suited."). Here, except as discussed further below, it appeared undisputed that Hautala had made remarks, and undisputed that they were unacceptably callous given the requirements of the job he was seeking. In light of this undisputed evidence, including Telecare's job announcement stating a requirement of the job was "[d]emonstrat[ing] the Telecare mission, purpose, values, and beliefs in everyday language and contact with the internal and external stakeholders"; and testimony of a Telecare administrator that Hautala's public statements were evidence of a failure to meet this requirement and thus were categorically disqualifying, Hautala's capacity for compassion appeared more akin to the on-off switch of whether one holds a college degree (an appropriate subject for consideration on summary judgment, *see Anthony*, 955 F.3d at 1127) than to whether one has an effective communication style or has produced tenure-worthy scholarship.

Despite doubt that *Lynn* would apply in this case to preclude consideration of subjective qualifications at the *prima facie* stage, however, the Court grants Plaintiff's motion for reconsideration based on Plaintiff's second argument; it was *not* undisputed on summary judgment, as the Court originally found, that Telecare would not have hired a candidate who had spoken of mentally ill patients in such derogatory terms. *See* MSJ Order at 6, 8 (quoting Berring Decl., ¶ 16) ("Had Hautala discussed how he enjoyed takedowns of patients or referred to clients as "crazy" in his interview with me, I would not have approved his application for further consideration for hire as an RN to work at Shelton."). As EEOC now points out to the Court, buried in the hundreds of pages that Plaintiff submitted in support of its motion, there is in fact evidence

ORDER GRANTING MOTION FOR RECONSIDERATION - 8

that Telecare was aware of Hautala's view that subduing a patient with mental illness was something that might be characterized as "fun." *See* Decl. of May Che, Dkt. 77-1, Ex. 14, at p. 214. The cited document is an email, reflecting Telecare employees' impression of Hautala's job interview, in which Hautala is alleged to have said "wrestling people high on methamphetamines is less fun than it use[d] to be and would prefer to talk them down versus take them down." *Id.* Evidence that Telecare advanced Hautala in the application process, despite having heard him speak of restraining mentally ill patients as "fun," may not ultimately contradict Telecare's position in this litigation that Hautala's comments regarding "meth heads" and "a good crazy person takedown" are disqualifying. The email does, however, sufficiently call into question the certainty of that assertion, at least enough for Plaintiff to survive summary judgment.

It is important to note that the Court failed to appreciate the dispute of fact in this case because Plaintiff did not cite this evidence in its summary judgment briefs. Courts have no obligation to sift through potentially hundreds of pages of exhibits (in this case the parties filed over 1,000 pages of exhibits in support of their motions), searching for evidence supporting a party's position. "Judges are not like pigs, hunting for truffles buried in briefs" or the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Plaintiff's failure to cite this evidence in opposition to Defendant's motion is particularly egregious given that the Court explicitly gave it a second chance to do so.[2]

---

[2] Although the Court sought supplemental briefing explicitly giving EEOC a second chance to dispute that Hautala's comments were disqualifying, in its Motion for Reconsideration EEOC now suggests it was improper for the Court to issue an order "the next business day" after the requested briefing had been submitted, taking the apparent position that the Court should have allowed EEOC a *third chance* to address the issue in a surreply. Pl.'s Mot. at 5, n. 5. But the Court would not have granted EEOC leave to file a surreply on supplemental briefing—an extraordinary request—to provide argument that should have been submitted two rounds of briefing earlier, in its original opposition to Defendant's summary judgment motion.

ORDER GRANTING MOTION FOR RECONSIDERATION - 9

1    Nevertheless, the Court concludes that to avoid the potential for manifest error in this case,

2    and in the interests of justice, summary judgment on the question of whether Hautala was a

3    "qualified individual" under the ADA is not appropriate on this issue. *See Thurman Indus., Inc. v.*

4    *Pay'N Pak Stores, Inc.,* No. C84-1171R, 1987 WL 14673, at *5 (W.D. Wash. Aug. 6, 1987)

5    ("Plaintiff did not present the evidence contained in the answers to defendant's interrogatories in

6    its original discussion of the [its] claims. Instead, plaintiff referred to this evidence in a footnote

7    in a discussion of general summary judgment standards. The court would be justified in refusing

8    to consider this evidence in the present motion [for reconsideration]. In the interest of justice,

9    however, the court will consider the plaintiff's remarshalled evidence.") (citation omitted).

10   Denying Claimant Hautala a chance to have his substantive disability discrimination claims heard

11   based on EEOC's failure to timely present the issue is a potential injustice that is easily avoided.

12   Further, little prejudice is done to Defendant by granting reconsideration, where the Court can now

13   proceed to considering the remainder of the parties' cross motions for summary judgment, already

14   on file.

15        To be clear, the Court by its reconsideration is not absolving Plaintiff of its obligation to

16   prove that Hautala was a qualified individual with a disability, including that he possessed the

17   ability to "demonstrate the Telecare mission, purpose, values, and beliefs in everyday language

18   and contact with the internal and external stakeholders," despite what the EEOC calls his

19   "imprudent" comments regarding "a good crazy person takedown." As is now apparent to the

20   Court, however, whether Telecare would actually have considered the comments disqualifying is

21   factually disputed, and is therefore a question more appropriately evaluated by a jury than a judge.

ORDER GRANTING MOTION FOR RECONSIDERATION - 10

IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Reconsideration. The Order Granting Defendant's Motion for Summary Judgment, Dkt. No. 91, and the Judgment at Dkt. No. 92 are hereby VACATED. The parties' Motions for Summary Judgment at Dkt. No. 63 and 65 are hereby re-noted for consideration for August 21, 2023. The Court will set a new pretrial and trial schedule if and when Plaintiff's claims survive summary judgment. The trial and pretrial dates in the Order Rescheduling Trial Date and Related Dates at Dkt. No. 44, and the Motion for Bill of Costs, Dkt. No. 93, are stricken.

SO ORDERED.

Dated:  August 21, 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING MOTION FOR RECONSIDERATION - 11