UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>TELECARE MENTAL HEALTH SERVICES OF WASHINGTON, INC.,<br><br>  Defendant. | No. 2:21-cv-01339-BJR<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

### I.   INTRODUCTION

This matter comes before the Court on (1) the Motion for Summary Judgment filed by Defendant Telecare Mental Health Services of Washington, Inc. ("Telecare"), Dkt. No. 63; and (2) the Motion for Partial Summary Judgment filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"), Dkt. No. 65. EEOC filed this lawsuit on behalf of Claimant Jason Hautala, claiming Telecare violated the Americans with Disabilities Act ("ADA") when it denied Hautala employment on the basis of his leg impairment. Having reviewed the briefs filed in support of and opposition to both motions, the Court rules as follows.

## II. BACKGROUND

In 2019, Claimant Jason Hautala applied for a position as a registered nurse with Telecare's Short-Term Evaluation & Treatment Center in Shelton, Washington. The Shelton facility provides mental health emergency care and "specializes in rehabilitation and recovery for adult residents who have been involuntarily committed due to having a chronic or serious mental health disorder and are experiencing acute mental health crises." Decl. Tyvonne Berring, ¶ 7. "An RN at Shelton provides acute inpatient services such as providing direct care in patient rooms, administering medications, and performing CPR and physical restraints of violent and assaultive clients when the need arises." Def.'s Mot. at 2 (citing Decl. of Yoon-Woo Nam, ¶ 3, Ex. A, Wilcox Dep. 56:12-23, 140:14-21; ¶ 4, Ex. B, Hautala Dep. 119:15-19). Patients can become "very violent and the violence can be unprovoked and … out of the blue," and the RN position "is a very physical job," requiring nurses who are trained in and able to perform crisis intervention techniques. Nam Decl., ¶ 5, Ex. C, Broadbent Dep. 44:22-45:3; Wilcox Dep. 122:13-21.

Based on Hautala's resume and an interview, Telecare extended an offer of employment, conditioned on a physical examination to determine his fitness for the position. Nam Decl., ¶ 6, Ex. D, Berring Dep. 95:8-11. To complete this exam, Hautala saw physician assistant Devon Rutherford, who concluded that Hautala was "able to fulfill requirements although requires assistance with long periods of standing/walking." Nam Decl., ¶ 18, Ex. P, Rutherford Exam Results. The reference regarding limitations on standing and walking was to Hautala's permanent leg impairment, stemming from a severe injury sustained in a motorcycle accident in August 2018. Nam Decl., ¶ 4, Ex. B, Hautala Dep. 60:23-25. Based on Rutherford's report, Telecare requested additional information from Hautala's primary care physician, Dr. Andrew Patel. Patel signed a form, provided by Telecare and filled in by Hautala, that stated Hautala was "unable to stand for

prolonged periods of time" and "unable to run or jog," and that "getting up from a squat is difficult." Nam Decl., Ex. R., Medical Information Form.

In December 2019, Telecare rescinded its conditional offer, based on information obtained during the post-offer exams. Telecare explained it had concluded that Hautala's "permanent work restrictions" precluded him "from performing all of the essential functions of the position, and there is no reasonable accommodation" it could provide to enable him to perform those functions. Nam Decl., Ex. Z, letter from A. Short. Telecare went on to explain that the "restrictions" specifically included Hautala's inability "to stand for prolonged periods or walk for 'moderate' distances," "to run or jog," and "to get down on the floor to render emergency patient care" or "get[] up from a squat" without difficulty. The letter reflected Telecare's understanding that given these restrictions, Hautala would not be able to "run away from or participate in a take-down if a client became violent." *Id*.

Based on Telecare's rescission of its offer, Hautala filed a charge of discrimination with the EEOC. Compl. ¶ 7. After determining that there was reasonable cause to believe that Telecare had violated Title I of the ADA, and that continuing conciliation efforts would be futile, the EEOC filed the instant action.

### III.   DISCUSSION

**A.  Summary Judgment Standard**

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If ... [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id*.

    **B.  Defendant's Motion for Summary Judgment**

    **1.  Elements of a Claim Under the ADA**

Telecare seeks dismissal of EEOC's ADA claim. Title I of the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff proceeding under this statute must first establish a *prima facie* disability discrimination claim, putting forth evidence that he or she: (1) is "disabled" within the meaning of the statute; (2) is a "qualified individual," able to perform the essential functions of his job, with or without reasonable accommodations; and (3) suffered an adverse employment action "because of" the disability. *See, e.g., Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir.2001) (citations omitted). "[T]he requisite degree of proof necessary to establish a *prima facie* case for an ADA claim 'on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 911 (W.D. Wash. 2019) (citing *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002)).

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 4

## 2. Whether EEOC Alleged Facts Establishing *Prima Facie* Case of Discrimination

In its Motion for Summary Judgment, Telecare does not dispute either that Hautala is "disabled" within the meaning of the ADA, or that he suffered an adverse employment action "because of" that disability. It takes issue only with the second prong of EEOC's *prima facie* case, arguing that Hautala is not a "qualified individual," able to perform the essential functions of the job, either with or without a reasonable accommodation.[1]

"To determine the essential functions of a position, a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs." *Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir.2001) (citing 29 C.F.R. § 1630.2(n)(3)). The job description in this case lays out the position's physical requirements; "employee is occasionally required to sit, squat, kneel, twist, push, pull and lift and carry items weighing 25 pounds or less as well as to frequently walk, stand, bend, reach and do simple and power grasping." Decl. of May Che, Dkt. No. 77-1, Ex. 12. The description also states that a candidate "must evade members served in the event of assaultive behavior and pass assault crisis/crisis prevention training." *Id.* Telecare argues there are several of these "essential functions" that Hautala would not have been able to perform, which can be generally categorized as follows: (1) restraining and/or moving quickly to evade a violent patient; (2) standing or walking for prolonged periods of time; and/or (3) squatting and/or performing CPR or rendering other aid to a patient on the floor. EEOC does not dispute these are essential functions:

---

[1] The Court has already ruled that there is at least one dispute of fact regarding Hautala's qualification for the job. *See* Order Granting Plaintiff's Motion for Reconsideration, Dkt. No. 103.

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 5

only that Hautala was able to perform them, either with or without a reasonable accommodation. The Court examines each category separately.

First, Telecare argues that Hautala's leg injury would have prevented him from being able to restrain and/or evade an agitated or assaultive patient, posing a danger to that patient and/or to others. Def.'s Mot. at 21-23. Telecare claims that the evidence demonstrates Hautala could not run, "jog backwards quickly," or pivot "very well" on his injured leg. Def.'s Mot. at 22. It also claims Hautala admitted he could not restrain a patient "with solely his upper body." *Id*. at 14. EEOC responds that the evidence demonstrates running is not an essential function of the position, and that Hautala testified he could "hustle" as necessary. Pl.'s Opp. at 16 ("Telecare employees testified that running is not required to evade assault.") (citing Short Dep. at 196:20-197:19; Berring Dep. at 196:12-197:2; 183:18-24; Wilcox Dep. at 151:17-152:6). The physician assistant who performed Hautala's Telecare-prescribed physical testified that her exam gave her no concerns about Hautala's ability to perform the function of "assist with restraint of members served in the event of assaultive behavior." Che Decl., Ex. 2, Rutherford Dep., 121:11-122:4. Dr. Patel, Hautala's treating physician, similarly certified that in his opinion, Hautala would be able to perform this function.[2] *Id*., Ex. 9, Patel Dep. 116-17. And Hautala himself testified that even with his injured leg, he is "in the top rungs of nurses that are capable of taking patients down." Che Decl., Ex. 1, Hautala Dep. 111:8-9. In light of this evidence that Hautala was capable of performing the essential function of evading and/or restraining Telecare patients, the Court concludes that

---

[2] The evidence in the record shows that although Hautala populated the form before he presented it to his doctor, the doctor reviewed the form and approved it, doing so because—and only because—he agreed with everything on the form. Telecare's issue with Dr. Patel's credibility is one for a jury, not for the Court on summary judgment.

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 6

there remains a dispute of fact appropriate for a jury and that Defendant is not entitled to summary judgment on this issue.

Second, Telecare argues that it is undisputed that Hautala could not stand or walk for prolonged periods of time during a shift. Telecare claims that it could not accommodate this inability by providing chairs in every area of the facility, or allowing the time necessary for Hautala to "simply saunter off and have a seat whenever he needed." Def.'s Rep. at 10. EEOC concedes Hautala "cannot sit, walk, or stand without interruption for over an hour without intense discomfort and pain." Hautala Decl., ¶ 1; *see* Pl.'s Opp. at 2 (citing Hautala Dep. at 314:5-315:4) (Hautala could not return to position he held before his accident "because standing still for multiple hours at a time, without breaks, was too uncomfortable."). However, EEOC denies that *prolonged* walking or standing was an essential function of the job, and claims that Hautala was capable of walking as much as the job did require. Hautala Decl., ¶ 7 ("I could and did walk all the time, and after graduating from physical therapy could easily walk a mile without interruption."). Further, EEOC does not argue, as Telecare suggests, that the accommodation Hautala was seeking was "carrying a chair from room to room," or having a chair placed in every area of the facility; or that Hautala needed to sit, at a moment's notice, at any time he began to feel pain or fatigue. Def.'s Mot. at 2. Instead, Hautala has testified that he "can withstand the pain without a break when circumstances require it. . . . I understood that at Telecare, there would be times I would need to stand or walk for prolonged periods without the ability to sit, which I could do." Hautala Decl., ¶¶ 1, 8. EEOC argues only that Hautala required occasional sitting during sustained periods of standing which, EEOC claims, was "standard for all RNs." Pl.'s Opp. at 6 (citing Broadbent Dep. at 55:3-24, 67:4-25; Short Dep. at 139:25-142:14 ("certainly sitting and standing are options"); Wilcox Dep. at 108:10-110:4, 141:21-144:7). Evidence that Hautala has admitted he could not

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 7

perform the duties of a "bedside RN" is not conclusive, given that the parties do not agree on exactly what is a "bedside RN" position, or whether the Telecare job was one. Pl.'s Opp. at 19 (citing Hautala Dep. at 314:5-315:12) (Hautala "did not consider the Telecare job . . . to fall in the category of 'bedside nursing.'"). The Court concludes that there is a dispute of fact as to whether Hautala was capable of standing, without rest, for the amount of time the Telecare position required, and/or whether access to chairs in the facility, and the time to sit as needed, was a reasonable accommodation that Telecare could have provided.

      Third and finally, Telecare argues that the evidence demonstrates Hautala was unable, without pain, to squat frequently or for long periods of time, get up quickly from a squatting position, or otherwise quickly get down to, or up off of, the floor in order to render emergency aid to a patient as necessary. However, EEOC denies that limitations on Hautala's ability to squat or kneel prevented him from being able to perform these functions. As he testified to Telecare in deposition, "I could squat. I just chose not to because it hurt worse than not squatting. So I had the ability to squat. I just didn't have the desire to squat." Nam Decl., Ex. B, Hautala Dep. 75:1-3. And indeed, the job description provides that "[t]he employee is *occasionally* required to . . . squat." Id., Ex. F (emphais added). Telecare has not presented evidence that Hautala was unable to squat, or get up from a squat, as quickly as needed—merely that it caused him pain, which Hautala has testified he was willing to endure if the situation required it. Hautala Decl., ¶ 1. Accordingly, the Court concludes, as with the first two essential functions of the job discussed above, that there is an issue of fact as to whether Hautala would be able to perform the squatting/kneeling/rendering aid on the floor function of the RN position at Telecare's Shelton facility, and denies Defendant's motion as to this issue.

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 8

### 3. Telecare's Affirmative Defenses

Telecare argues that regardless of whether EEOC can make out a *prima facie* case of discrimination, Telecare is entitled to summary judgment based upon several of its affirmative defenses. In particular, Telecare moves for dismissal of EEOC's claims based on Telecare's (1) Fourth Affirmative Defense, that its actions were supported by "non-discriminatory and non-retaliatory business reasons," and specifically the safety of its patients and staff; (2) Sixth Affirmative Defense, that the requested accommodation would have constituted an "undue hardship"; and (3) Seventh Affirmative Defense, that Telecare took the actions it did because Hautala would have posed a "'direct threat' to the health or safety of others and himself" in the Telecare workplace. Am. Ans. at pp. 6-7.

All of these defenses, however, are dependent, at least in part, upon facts that the Court has already determined are in dispute. According to Telecare, the business reasons defense, for example, requires a finding that Hautala was unable to perform the necessary function of restraining violent patients, an issue on which EEOC has raised a dispute of fact. Similarly, Telecare argues that providing a chair to Hautala whenever needed would be an "undue hardship," referring to its Seventh Affirmative Defense, but again, the Court has already determined that the parameters of this requested accommodation, and whether it would have been reasonable, remain in dispute. Because Telecare cannot demonstrate an absence of factual dispute on its affirmative defenses, the Court denies Telecare's motion for summary judgment on these defenses.

### C. Plaintiff's Motion for Partial Summary Judgment

EEOC's motion seeks judgment on Telecare's (1) First Affirmative Defense, that Hautala failed to mitigate his backpay damages; and (2) Third Affirmative Defense, that EEOC failed to conciliate. At trial, Defendant will have the burden of proof on its affirmative defenses. *See Jones*

*v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). Therefore Plaintiff need only show at summary judgment that the nonmoving defendant does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Celotex Corp.*, 477 U.S. at 322–23. The defendant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

**1. First Affirmative Defense: Mitigation of Damages**

"A plaintiff who has allegedly been wrongfully terminated has a duty to 'use reasonable diligence in finding other suitable employment.,"  *Erickson v. Biogen, Inc*., 417 F. Supp. 3d 1369, 1386 (W.D. Wash. 2019) (citing *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995)). A defendant asserting failure-to-mitigate as an affirmative defense has the burden of proving that the plaintiff failed to mitigate his damages. *Sangster v. United Air Lines, Inc*., 633 F.2d 864, 868 (9th Cir. 1980), cert. denied, 451 U.S. 971 (1981). To satisfy this burden, Defendant must prove both that "during the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, *and* that [the plaintiff] failed to use reasonable diligence in seeking one." *EEOC v. Farmer Bros. Co*., 31 F.3d 891, 906 (9th Cir. 1994) (emphasis in original) (citing *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978)).

EEOC moves for summary judgment on this affirmative defense. It argues that Telecare lacks evidence in support of the first prong of the defense: that there were "substantially equivalent" job opportunities available during the time period for which EEOC seeks backpay, between mid-December 2019, when Telecare rescinded its offer, and late May 2020, when Hautala

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 10

began his job with the Washington Corrections Center.[3] District courts in the Ninth Circuit have defined "substantially equivalent" employment in this context to mean that "which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position" the claimant was denied because of his disability. *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d 1015, 1027 (D. Ariz. 2014); *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 967 (D. Haw. 2010) (citing, inter alia, *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990)).

The evidence that Telecare offers in support of the availability of "substantially equivalent" employment is a number of job announcements that were emailed to Hautala during the relevant period of his job search. These announcements were for jobs to which Hautala did not apply, including positions as a home health nurse, an OR nurse, an oncology nurse, and a critical care nurse. *See* Def.'s Opp., (citing Nam Decl., Exs. I, J, N, O). Based on this evidence, which the Court discerns is only a small sample of the total number of job announcements Hautala received, the Court concludes that a reasonable jury could infer that substantially equivalent employment was available to Hautala, had he pursued it, during the approximately five months in question. *See Cheeks*, 22 F. Supp. 3d at 1026–28 (where defendant produced approximately 100 job announcements, "[b]ecause of the sheer number of jobs specifically responsive to Plaintiff's own search parameters, the Court finds it reasonable to infer that at least one of the dozens of potentially equivalent jobs may have been, in fact, equivalent to Plaintiff's previous position."). What the evidence here lacks in detail and volume can be blamed at least in part on EEOC and Hautala's

---

[3] In a footnote, EEOC also claims that Hautala exercised reasonable diligence in obtaining employment, but does not argue it is entitled to summary judgment on this point. *See* Pl.'s Mot. at p. 12, n. 7.

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 11

failure to turn over the documents in a timely fashion and Telecare's consequent inability to conduct follow-up discovery on its mitigation defense.

Whether a substantially equivalent position was available, and whether Hautala exercised reasonable diligence in obtaining one, is a question that Telecare is entitled to present to a jury, and the Court accordingly denies EEOC's motion for summary judgment on this affirmative defense.

**2. Third Affirmative Defense: Failure to Conciliate**

EEOC moves for summary judgment on Telecare's Third Affirmative Defense, "Failure to Exhaust Administrative Remedies." As alleged in Defendant's Amended Answer: "While Plaintiff provided a determination letter ostensibly inviting conciliation, Plaintiff was wholly unresponsive to Defendant's counteroffer, and provided no reason nor factual basis for its decision not to respond to Defendant's counteroffer. For this and other reasons, Plaintiff's Complaint is barred, in whole or in part, by the failure to exhaust all administrative remedies, and/or to perform all conditions precedent to suit, including but not limited to conciliating in good faith the allegations at issue herein pursuant to 29 U.S.C. § 626(b)." Am. Ans., Dkt. No. 62, at 6. That provision requires EEOC to "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." Whatever Defendant may have meant by the "other reasons" Plaintiff's complaint is barred, or whatever other "administrative remedies" it might have intended to allege were not exhausted, at this point Defendant raises the issue only of EEOC's purported failure to conciliate.

EEOC argues that the undisputed facts show it has met its conciliation obligation as a matter of law. In response to Hautala's "Charge of Discrimination" and after investigation, EEOC

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 12

sent Telecare a "Letter of Determination," asserting reasonable cause to believe Telecare had engaged in discrimination against Hautala, and inviting "the parties to join with it in reaching a just resolution of this matter." Decl. of Elizabeth Cannon, Dkt. No. 68, Ex. 2. EEOC also sent Telecare "a formal offer to conciliate" and "an initial demand." Decl. of Catherine Dacre, Dkt. No. 22, ¶ 5. After Telecare responded with a "counteroffer," EEOC sent Telecare a "Notice of Conciliation Failure" letter, in which the EEOC stated that "efforts to conciliate . . . have been unsuccessful." Cannon Decl., Ex. 3. The EEOC filed this lawsuit three weeks later.

This is not the first time the Court has addressed the question of whether these facts establish that the EEOC met its conciliation requirement. In the early stages of this litigation, EEOC filed a Motion to Strike Telecare's failure-to-conciliate defense. EEOC argued then, as it does now, that the Supreme Court has limited the scope of judicial review of EEOC's conciliation efforts. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015). This limited scope does not include an evaluation of the sufficiency or other details of the conciliation; merely whether conciliation did or did not occur. *Id*. at 494, 495 ("[T]he scope of that review is narrow, reflecting the abundant discretion the law gives the EEOC to decide the kind and extent of discussions appropriate in a given case."). The Court declined to strike the affirmative defense, noting that "[t]he allegations before the Court at this stage do not indisputably demonstrate that EEOC met its conciliation obligations." Order Denying Pl.'s Mot. to Strike, Dkt. No. 35, at 4-5.

The Court is of the opinion that the EEOC did not in fact meet the obligation, expressed in the ADA statute and in *Mach Mining*, to "try to engage the employer in some form of discussion." *Mach Mining*, 575 U.S. at 494; *see also* Order Denying Pl.'s Mot. to Strike at 4 ("It is at the very least a matter of debate whether this exchange of letters can be characterized as a 'discussion.'"). It must also be said that the Court does not read *Mach Mining*—as EEOC apparently does—to go

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 13

so far as to relieve EEOC of any obligation to conciliate in good faith. Instead, the Court in *Mach Mining* merely declined to import into the Civil Rights Act claim before it the express duty, contained in the National Labor Relations Act, for both parties to bargain "in good faith with respect to" the subject matter of that statute. *Mach Mining*, 575 U.S. at 491. Such a duty, accompanied by a "number of specific requirements" and a "detailed body of rules" devised by courts "to police good-faith dealing divorced from outcomes," makes little sense in the context of a statute that, like the ADA, is specifically focused on "substantive outcomes" and "eschew[s] any reciprocal duties of good-faith negotiation." *Id*. The *Mach Mining* holding, carefully read, does not support EEOC's sweeping claim that the Supreme Court has "reject[ed] any 'good faith' component to EEOC's conciliation requirements." Pl.'s Mot. at 19. Indeed, the notion that a federal agency does not have an obligation to act in good faith in *all* of its official endeavors is one the Court finds offensive.

Nevertheless, Telecare's failure-to-conciliate affirmative defense fails; not on its merits, but for the limited nature of its remedy. That remedy is not dismissal; it is conciliation. As the Ninth Circuit has held, "[e]ven if the EEOC . . . had failed to conciliate prior to bringing suit, the appropriate remedy would be a stay of proceedings to permit an attempt at conciliation, not the dismissal of the aggrieved employees' claims." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1199 (9th Cir. 2016). In this case, the Court did in fact order the parties to mediation—one of the prescribed methods of conciliation—after denying EEOC's motion to strike. That mediation was not a success. Telecare argues that court-ordered mediation after the filing of the complaint is no substitute for timely, pre-filing conciliation. It suggests that the mediation in this case was insufficient because, in part, there was no stay. *See* Def.'s Opp. at 19-20. Telecare does not claim prejudice from the lack of a stay, or otherwise explain how a stay would have altered the outcome

ORDER RE MOTIONS FOR
SUMMARY JUDGMENT - 14

of mediation, or affected Telecare's position on EEOC's purported failure to conciliate. In light of the clear prescription articulated in *Horne*, Telecare's arguments, unsupported by any legal authority, are unpersuasive. Because Telecare has already been granted the remedy its failure-to-conciliate defense affords it, the Court grants EEOC's motion for summary judgment on this defense.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. EEOC's Motion for Partial Summary Judgment, seeking dismissal of two of Telecare's affirmative defenses, is DENIED in part and GRANTED in part as set forth above.

The parties are further ordered to meet and confer and, within 10 days of issuance of this Order, submit to the Court a Joint Status Report briefly outlining what issues remain for trial; and proposing three alternative agreed trial dates within the next 120 days. Upon selection of one of those dates, the Court will set the remaining pretrial deadlines.

SO ORDERED. Dated: September 12, 2023.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge