UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>      Plaintiff,<br>v.<br>TELECARE MENTAL HEALTH SERVICES OF WASHINGTON, INC.,<br>      Defendant. | No. 2:21-cv-01339-BJR<br><br>**ORDER ON MOTIONS IN LIMINE** |

### I. PLAINTIFF'S MOTIONS IN LIMINE

1. <u>After-Acquired Evidence of "Subjective" Qualifications for the Position</u>

Plaintiff seeks exclusion of evidence of "private comments" claimant Jason Hautala made around the time he was interviewing for the Telecare position, which were allegedly unknown to Telecare at the time and were not learned until much later, during discovery in this lawsuit. The statements include: "in my youth, I used to enjoy a good crazy person takedown, but as I got older, I enjoy these things less and less," and "fighting off meth heads isn't as much fun in my 50s as it was in my 30s." *See* Order Granting Mot. Recon. at 3, Dkt. No. 103 (citing Nam Decl. ¶ 4, Ex. B, Hautala Dep. 112:1- 10; Nam Decl. ¶ 31, Ex. CC, Hautala Dep. Vol. II 260:10- 23.).

Telecare argues that the statements are relevant to one of the elements of Plaintiff's prima facie case: that Hautala was a "qualified individual" capable of performing the "essential

ORDER RE MOTIONS IN LIMINE - 1

functions" of the position. 42 U.S.C. § 12112(a); *see Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1112 (9th Cir. 2000) (ADA protects only "qualified individuals" from employment disability discrimination.). According to Telecare, a demonstrated compassion for patients suffering from mental illness and substance abuse disorder was an essential qualification of the job, and Hautala's comments are evidence that he lacked this qualification.

Plaintiff acknowledges that "late-discovered *objective* criteria to determine an applicant's qualification" is admissible. Pl.'s MIL at 2; *see Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1130 (9th Cir. 2020). It claims, however that "case law reflects that after-acquired subjective criteria are not relevant to an applicant's qualifications for a job." Pl.'s MIL at 2. However, Plaintiff does not cite, and the Court was unable to identify, any cases explicitly holding that late-acquired evidence of an employee's subjective qualifications is not admissible in an ADA claim.[1] The relevant EEOC regulations provide only that "[t]he term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) . The regulations further define "essential functions" to mean "the fundamental job duties of the employment position," not including "the marginal functions of the position." 29 C.F.R. § 1630.2(n). They discuss at some length the characteristics of an essential function, and the evidence a defendant must put forth to prove a function is essential,

---

[1] In at least one very recent case within the Ninth Circuit, the district court found a dispute of fact as to whether being able to "[i]interact with others in a friendly, positive and courteous manner" and "interacting with guests and delivering *Beyond the Best* service" were "essential functions"; and whether a plaintiff who had "difficulties in communicating clearly" and who made "inappropriate comments to guests" was qualified to perform such functions. *Farfan v. Station Casinos LLC*, No. 220CV01516CDSNJK, 2024 WL 343310, at *4 (D. Nev. Jan. 29, 2024).

ORDER RE MOTIONS IN LIMINE - 2

stating that "[w]hether a particular function is essential is a factual determination that must be made on a case by case basis." 29 C.F.R. § Pt. 1630, App. But nowhere do the regulations limit "essential functions" to only objective criteria.

Plaintiff argues that this distinction nevertheless should be drawn, because "[a]llowing Telecare to claim *any* newly discovered conduct is disqualifying although such conduct was unknown to decision makers at the time . . . permits employers to seize upon an eleventh-hour misdeed as justification for disqualifying job applicants." Pl.'s MIL at 2. The Court is not, however, allowing Telecare to claim that "any" of Hautala's conduct is disqualifying. Telecare must still convince a jury that having a demonstrated compassion for patients who suffer from mental illness is in fact a qualification of the position. EEOC can, in turn, offer evidence that Telecare *did* know about Hautala's purportedly callous attitude towards the mentally ill, and conditionally offered him the job anyway; or argue that the comments do not necessarily reflect Hautala's outlook towards the mentally ill. Determining which side has the better argument and evidence is a task for the jury, as this Court has already determined. *See* Order Granting Mot. for Recon. at 10 ("[W]hether Telecare would actually have considered the comments disqualifying is factually disputed, and is therefore a question more appropriately evaluated by a jury than a judge."); *see also Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) ("Determining whether a particular function is essential is a factual inquiry."). This motion in limine is denied.

2. Impermissible character evidence or information related to Jason Hautala

Plaintiff seeks exclusion of "impermissible character evidence" related to Jason Hautala, and more specifically that he "is prone to criminality (e.g., fraud or forgery) or that people with a martial arts training or who use the term "takedown" to describe physical restraints are inclined to

ORDER RE MOTIONS IN LIMINE - 3

being "trigger happy" when determining whether to restrain a volatile patient." Pl.s MIL at 3. The first part of this motion is apparently concerned with evidence or argument that Hautala committed "forgery" and submitted a "sham" medical information form when he was applying for the Telecare position, by pre-populating an examination report for his treating physician, Dr. Andrew Patel, to sign. The second part concerns suggestions Defendant apparently made during discovery that Hautala was prone to being "trigger happy" with volatile patients as a result of having been trained in martial arts.

There is no indication that Telecare intends to use evidence related to these episodes as showing Hautala is either "prone to criminality" or "trigger happy." Additionally, on the first issue, Telecare states it does not intend to use the words "fraud" and "sham" in its opening statement, but argues that it has a right to question Hautala on his decision to pre-populate the medical form, which it argues is relevant to the reliability of the physician's assessment of Hautala's fitness for the position. Again, the Court agrees. However, Telecare shall avoid inflammatory descriptions such as "forgery" and "fraud," as the facts at this point do not support these characterizations.

As to the second issue, Telecare claims it has no intention of arguing that Hautala was "trigger happy" with patients. It says, however, that if Hautala attempts to argue that his martial arts training compensated for limitations related to his disability, it would like the opportunity to argue that "a nurse who goes first or reflexively to martial arts or military combat training, presents a danger to the patient and other staff." Def.'s Resp. at 6. The Court concludes that if Plaintiff decides to put Hautala's martial arts training at issue, both sides should have the opportunity to argue and provide evidence of the value of that training to performing the RN position.

ORDER RE MOTIONS IN LIMINE - 4

3. Medical information unrelated to Hautala's leg impairment or emotional distress

Plaintiff asks the Court to exclude "any argument, evidence, or reference concerning any condition other than Mr. Hautala's leg impairment predating October 12, 2019, the date he applied to Telecare" and "any medical conditions or prescriptions reflected in records after December 2019, when Telecare rescinded Mr. Hautala's job offer." Pl.'s MIL at 4. It is unclear what specific evidence Plaintiff is asking the Court to exclude. It is also impossible form the information provided whether the medical information Plaintiff is asking the Court to exclude might be relevant to his claims. Without more information, the Court is unable to determine whether the evidence Plaintiff seeks to exclude is admissible. This motion is therefore denied.

4. Evidence, argument, or reference stemming from improper hypotheticals

Plaintiff seeks exclusion of "improper hypotheticals." While the Court will of course not allow "improper hypotheticals," both parties may present argument that is supported by whatever facts the evidence supports. This motion does little more than "merely repeat the requirements of the Federal Rules of Evidence" as prohibited by the Court's Standing Order, and is denied.

5. Evidence, argument, or references prohibiting Defendant from characterizing Dr. Andrew Patel's signed Interactive Process Medical Information Form as a sham

Plaintiff asks the Court to prohibit reference to Hautala's having pre-populated Dr. Patel's medical report as a "sham" or a "forgery" or as "fraudulent.". This is essentially the same issue as that raised in Plaintiff's Motion in Limine No. 2, and the Court's ruling is the same. Telecare shall avoid inflammatory characterizations of the form, but the subject matter is relevant to the form's reliability and an appropriate one for trial.

ORDER RE MOTIONS IN LIMINE - 5

6. <u>Communications between Hautala and EEOC regarding pre-suit settlement negotiations</u>

Plaintiff asks the Court to exclude evidence concerning pre-suit settlement negotiations, in particular a November 18, 2020 email exchange between the EEOC's investigator and Mr. Hautala discussing plans to extend an early settlement offer and the amount of the offer. Pl.'s MIL at 7. Under Federal Rule of Evidence 408, a party may not introduce such evidence "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Therefore this motion, though apparently unnecessary, is granted.

7. <u>Evidence, argument, or reference suggesting that a finding in favor of EEOC would cause financial harm to Telecare Mental Health Services or its customer base</u>

Plaintiff argues that "Telecare should be precluded from offering testimony, evidence, argument, or any comment, whether implicit or explicit, suggesting it would experience economic hardship in the event of a judgment against it." Pl.'s MIL at 8. It is Plaintiff, however, that is seeking punitive damages and, as it asserts at Motion in Limine No. 13, "intends to present financial and tax records as evidence to support its claim for punitive damages." If, in the context of Plaintiff's damages, the issue is raised, Telecare will have the opportunity to respond to it.

EEOC also asks the Court to exclude evidence "suggesting that an adverse judgment would be harmful to [Telecare's] mental health patients or do a disservice to society overall." *Id*. The Court agrees such evidence would be irrelevant to questions of Telecare's liability and/or the appropriate measure of damages, and Plaintiff's motion to exclude evidence and argument on this point is granted.

8. <u>Prejudicial or disparaging references to EEOC or its counsel</u>

Plaintiff seeks an order excluding: "(1) speculation about the EEOC's reasons for bringing the lawsuit or questioning whether EEOC should be advancing, or whether tax dollars should be

ORDER RE MOTIONS IN LIMINE - 6

used on, this lawsuit given some of Mr. Hautala's comments; (2) defense counsel's personal feelings towards EEOC and/or past experiences defending employers during EEOC investigations or litigation; (3) pre-trial motions, including EEOC's briefs on its Motion for Reconsideration (Dkts. 96 & 102) which Telecare identified on its trial exhibit list, see Che Dec. at ¶13; and (4) the discovery process and discovery disputes or issues, and the Court's related rulings." Pl.'s MIL at 8. As a general matter, Plaintiff's reasons for bringing this lawsuit are obviously relevant and this category of evidence is both too broad and too vague to permit a meaningful ruling. The remaining categories appear, without the benefit of context, irrelevant; and the Court cautions both sides that it will not permit this trial to become a referendum on EEOC's "mission" or the pretrial conduct of the attorneys in this case. This motion is neither granted nor denied.

9. <u>Evidence, argument, or reference to Defendant's charitable activities, corporate character, reputation, and public relations</u>

Plaintiff's request for a blanket exclusion of references to Defendant's charitable activities and "corporate character" is denied. If Telecare's reputation is put at issue—and the Court cannot from this vantage point perceive how it would be relevant—Telecare will have the opportunity to offer evidence and argument on its own behalf. If not, any such evidence or argument would be irrelevant.

10. <u>Evidence, argument, or reference that Jason Hautala owns or possesses firearms</u>

Hautala has testified that he was so distraught by Telecare's rescission of its offer that he took the step of removing firearms from his house out of fear of self-harm. Plaintiff has put Hautala's mental health at issue by seeking emotional distress damages. It is difficult to see why *Telecare* would seek to introduce such specific evidence supporting Plaintiff's claim that Hautala was experiencing suicidal ideation as a result of Telecare's actions. In any event, the Court agrees

ORDER RE MOTIONS IN LIMINE - 7

this evidence would be more prejudicial than probative and grants EEOC's motion seeking its exclusion.

11. Evidence, argument, or reference to Dr. Will's medical records

Plaintiff seeks exclusion of all reference to Ryan Will, M.D., Hautala's treating orthopedic surgeon. Will has not testified in this action and neither party listed him as a witness in Initial Disclosures or for trial. However, Will's September 20, 2019 chart notes were introduced into evidence during the deposition of Dr. Patel, and will be admitted at trial in this context. *See infra* §B.3.

12. Party Admissions from Defendant's Discovery Responses

Plaintiff seeks permission to introduce, in "summary form," excerpts from Defendant's Answer, Interrogatory Responses, Responses to Requests for Admission, Position Statements, and Responses to Requests for Information. Plaintiff states "[g]iven the potential volume of the admissions, the EEOC requests that the Court grant EEOC permission to present the admissions to the jury listed in summary format pursuant to [Federal Rule of Evidence] 1006." Pl.'s MIL at 11. That rule authorizes use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." EEOC has provided few details regarding any of these proposed admissions, and concedes it "does not necessarily plan to offer or introduce all of the admissions highlighted in this motion" and merely "wants the option of using them selectively to supplement or impeach testimony adduced at trial." *Id*. at 13.

The Court agrees that discovery responses may be admissible as admissions of a party opponent. However, without more specificity, the Court is unable to rule on the admissibility of

ORDER RE MOTIONS IN LIMINE - 8

EEOC's vague, hypothetical admissions, and therefore declines to provide a ruling on this motion at this time.

13. <u>Financial documents in support of claim for punitive damages</u>

Plaintiff seeks a preemptive ruling that it may introduce financial and tax records as evidence to support its claim for punitive damages, if and when the Court determines that EEOC has established a predicate for a punitive damages instruction, i.e., there is sufficient evidence that Telecare acted with malice or reckless indifference. EEOC also posits the evidence is relevant to refute Telecare's undue hardship defense.

While such records generally would be relevant to EEOC's punitive damages claims, the issue here is that apparently Defendant Telecare Mental Health Services of Washington produced the financial records not of itself, but of its parent company, Telecare, Inc. (alternately referred to as "Telecare Corporation" in briefing), which is not a party to this lawsuit. EEOC asserts it did not perceive this discrepancy until a few weeks ago during a conference concerning these motions in limine. Telecare now argues that the financial records of its parent company are irrelevant and thus inadmissible, despite having produced those records in response to EEOC's Request for Production. According to Plaintiff, Defendant's counsel has represented that Telecare Mental Health Services of Washington, Inc. does not have financial or tax records that are separate from the consolidated records produced in discovery.

Based on Telecare's failure to produce any documents responsive to EEOC's RFP seeking financial records related to Defendant other than those belonging to Defendant's parent company, and given Defendant's statement that it does not have financial records separate from these records, the Court provisionally concludes that EEOC may (when appropriate) introduce the records to the extent they demonstrate the financial state of Defendant. Indeed, as Defendant concedes, "[t]he

ORDER RE MOTIONS IN LIMINE - 9

documents indeed evidenced Defendant's financial condition during the relevant period, but only as it was intertwined with, and part of, Telecare Corporation's finances." Def.'s MIL at 14. Accordingly, a closer review of those records, in the event punitive damages are put at issue, will be required to determine which documents may be admitted, and in what form, to avoid jury confusion concerning the separate corporate entities.

14. <u>Permitting Jason Hautala to Attend All of Trial</u>

Plaintiff asks the Court to order that Jason Hautala be allowed to attend all of the trial. Telecare objects, arguing that Hautala is not a party or party representative, but a mere witness. Under the Federal Rules of Evidence and this Court's Standing Order, witnesses should not be permitted to remain in the courtroom unless they are testifying or they are a party or party representative. FRE 615; Court's Standing Order at 7.

Hautala is obviously not a mere witness; he is the charging claimant in this case, with a far greater interest in its outcome than a typical witness would have. This is, in effect, his day in court as much as it is EEOC's. While Telecare denies Hautala's presence in the courtroom is critical to EEOC's presentation of its case, it also has failed to articulate what prejudice—other than a vague and unsupported concern that hearing the testimony of other witnesses might influence his—might result. It is likely Hautala will be the first witness in the trial to testify, ameliorating much of this concern. In the absence of a specific and articulated prejudice resulting from allowing Hautala to remain in the courtroom during the remainder of the trial, the Court will allow it.

ORDER RE MOTIONS IN LIMINE - 10

**B. Defendants' Motion in Limine**

1. <u>Evidence or argument concerning Mr. Hautala's subsequent employment at Washington Corrections Center ("WCC")</u>

Defendant seeks exclusion of evidence that Hautala could perform certain functions at his subsequent employment to prove that he could have performed the functions of the Telecare job. Hautala began working at the Washington Corrections Center in May 2020, approximately five months after Telecare rescinded its offer, and has testified that during his employment with WCC he "had squatted for 30, 45 minutes at a time . . . I have done CPR twice at [WCC]. I have had seizures that I've responded to. I had a stroke I responded to. I had people pass out I've responded to. So treating them on the ground." Dkt. 66-1, Exhibit 2, Deposition of Jason Hautala ("Hautala Dep.") at 75:16-24. Squatting and treating patients on the ground are examples of essential functions that Telecare posits Hautala would have been unable to perform at the Telecare facility.

Telecare is concerned that the two positions are dissimilar and inviting any comparison would confuse and mislead a jury. For example, prison guards were on hand at WCC to perform necessary restraints, while restraining a violent patient would have been an essential function of the nursing position at Telecare's facility. Telecare also states, correctly, that the determination of whether an individual is qualified to perform a job should be made "at the time of the employment decision," not at some later ime. Def.'s MIL at 2 (citing *Anthony*, 955 F.3d at 1129; 29 C.F.R. pt. 1630, app. to § 1630.2(m)).

As the Court clarified in *Anthony*, however, while "an employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time," the regulation "does not limit the qualification determination to the facts known to the employer at the time of the challenged employment action." *Id*. The Court concludes that Hautala's ability

ORDER RE MOTIONS IN LIMINE - 11

to perform certain functions at WCC is relevant to whether he would have been able to perform similar functions mere months earlier. Telecare will have the opportunity on cross examination and perhaps through other witness testimony to highlight the distinctions between WCC and the Telecare facility, distinctions a jury can surely grasp. Similarly, Telecare is free to emphasize the five-plus months' passage of time between the Telecare offer and the WCC job. The Court will not allow evidence of Hautala performing functions at WCC that are not highly similar to those he would have been required to perform at Telecare. The Court also does not believe, however, that Hautala's ability to perform these functions is either irrelevant, or so confusing or prejudicial as to require blanket exclusion, and Telecare's motion in limine on this evidence is denied.

  2. <u>Evidence or argument concerning Mr. Hautala's brother's suicide</u>

  Telecare seeks exclusion of reference to the suicide death of Hautala's brother, which occurred not long after Telecare rescinded its job offer. EEOC said that it intends to elicit testimony that, because Hautala was distraught at rescission of the Telecare offer, he was unable to support his brother's mental health issues, multiplying Hautala's mental distress resulting from Telecare's actions. Telecare argues testimony about the incident will unfairly prejudice a jury in Hautala's favor.

  Hautala's claimed inability to support his brother is relevant to the kind and degree of mental distress he may have been experiencing after Telecare rescinded its offer, and Hautala will be allowed to testify to the various ways that he claims his mental distress from Telecare's actions impacted his life. Of course, there is the threat of prejudice resulting from sympathy a jury may feel for Hautala's loss, unrelated to Telecare's actions. EEOC also runs the risk, however, that a jury will ascribe whatever mental distress Hautala was experiencing in the winter and spring of 2020 not to losing the Telecare job, but to the loss of his brother, an event Telecare

ORDER RE MOTIONS IN LIMINE - 12

obviously could not have foreseen and cannot be held responsible for. The Court cautions the parties that prolonged testimony on this subject will not be allowed. But EEOC will be allowed the opportunity to let Hautala discuss the effect the rescission of the job may have had on his mental health and his ability to provide support to his brother, trusting the jury can separate its sympathies from the facts and ascribe the appropriate significance to Hautala's testimony.

3. <u>Opinion offered by Andrew Patel, M.D. concerning whether Mr. Hautala could safely perform the job functions</u>

Telecare seeks exclusion of the testimony of Dr. Andrew Patel, M.D., Hautala's treating primary care physician. In November 2019, at Hautala's request, Patel signed the Interactive Process Medical Information Form (what he calls a "workplace accommodation form") opining that, based on his knowledge as Hautala's treating physician, Hautala would be able to perform the duties of the Telecare job as set out in a job description provided by Telecare. Telecare argues that since Plaintiff is not offering Patel as an expert witness (and did not comply with the requirements of Federal Rule 26(a)(2) for the offering of such witness), any of Patel's opinions "based on scientific, technical, or other specialized knowledge" are impermissible lay opinion under Federal Rule of Evidence 701. As Telecare argues, a treating physician not designated as an expert may only testify "to opinions formed during the course of treatment and limited to the scope of treatment rendered." Def.'s MIL at 6 (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)). Telecare states "[t]he scope of Dr. Patel's testimony must be strictly limited to what he actually knows." *Id*.

The Court acknowledges that the line between "expert witness" testimony and the lay opinion of a treating physician who forms and offers opinions during the course of treatment is not always a bright one. However, Patel was asked, well before this litigation began, to provide

ORDER RE MOTIONS IN LIMINE - 13

his opinion, as Hautala's treating physician, on Hautala's condition and whether he could perform a job. His testimony is not improper lay opinion testimony under Federal Rule of Evidence 701; he is testifying as to what his opinion was, in November 2019, as to whether Hautala could have performed the job.

After reviewing many of the excerpts to which Telecare objects, the Court concludes that Patel's testimony is, as a general matter, neither improper lay opinion testimony nor non-compliant expert witness testimony. Nearly all of his "opinion" testimony is based on his personal experience as Hautala's treating physician, and/or reflected in records created at the time. *See Hicks v. Les Schwab Tire Centers of Portland, Inc.*, No. 2:17-CV-00118-SB, 2019 WL 2245007, at *3 (D. Or. May 24, 2019) ("The Court will allow Hicks' treating physicians to testify as percipient witnesses about their diagnosis and treatment of Hicks, and to any opinions formed during the course of treatment, if those opinions are reflected in Hicks' medical records."). Patel is quite candid about the limited foundation of his knowledge at the time he signed the form, and his limited recollection of the events about which he was being asked to testify, approximately three years later. Patel does not come off as an "expert," with superior knowledge and expertise, offering an opinion on an ultimate issue in this case. He is a doctor who routinely signed "workplace accommodation forms," based on his knowledge of the patient and a review of the medical record, and who barely remembers signing this one. The Court is confident that the jury can ascribe appropriate weight to the opinions discussed in the deposition, particularly as the Court will allow Patel's testimony about his lack of specific recollection and knowledge about foundational matters.

With these guidelines in mind, the parties are directed to revise their designations, and resubmit the designations of Patel's deposition, no later than Wednesday, February 28, 2024. If

ORDER RE MOTIONS IN LIMINE - 14

objections remain, the Court will review them individually. In addition, the parties are sternly cautioned to eliminate redundant and irrelevant material, or the Court will do so.

 4. <u>Personal references from Mr. Hautala's past employers about his ability to perform the RN position at Telecare Mental Health Services</u>

Telecare asks the Court to exclude as hearsay two "personal references" provided by Connie Covert and Sherida Anderson, who provided information about Hautala from previous positions. Covert and Anderson were not disclosed as witnesses. Telecare argues the references are hearsay, and further that these individuals had no personal knowledge of Hautala's ability to perform the Telecare job.

The references are not hearsay if they are offered as evidence of the information Telecare had when it extended to Hautala a conditional offer, rather than for the truth of what they state, and are admissible for this purpose. The motion is denied.

 5. <u>Evidence of Telecare Corporation's financials</u>

This motion has two components. The first is that Telecare objects to introduction of financial information related to its parent company, Telecare, Inc. This motion is essentially a cross-motion to Plaintiff's Motion in Limine No. 13, and has been ruled on. *See supra.*

Second, Telecare argues that the Court should not permit the EEOC to introduce evidence of Defendant's financials unless and until it proves Telecare Mental Health Services of Washington, Inc. is liable for disability discrimination. This is essentially a request to bifurcate the trial into a liability stage and a damages stage. The Court GRANTS this motion. The first phase of the trial shall concern issues related to whether Telecare violated Hautala's rights under the ADA and whether it did so in an intentional and malicious manner. The second phase will proceed if and only if a jury finds Defendant is liable under the ADA *and* concludes that

ORDER RE MOTIONS IN LIMINE - 15

Telecare acted with malice or reckless indifference. Evidence of Telecare's financials will be admitted only at this second phase, if at all.

ORDER RE MOTIONS IN LIMINE - 16

**C. Additional Pretrial Rulings**

1. <u>Affirmative Defenses</u>

In the parties' Pretrial Order, EEOC has raised objections to two of Defendant's affirmative defenses: (1) mitigation of damages and (2) business necessity. Both objections are overruled.

2. <u>Statement of the Case</u>

The Court intends to read to the prospective jury pool the following statement of the case. Counsel shall notify the Court immediately with any objections.

> This case involves a lawsuit brought by the Plaintiff United States Equal Employment Opportunity Commission against Defendant Telecare Mental Health Services of Washington, Inc. Telecare is a behavioral health services company providing care for people with serious mental illnesses. The EEOC claims Telecare engaged in discrimination based on disability when it withdrew a conditional offer of employment to registered nurse Jason Hautala because of Mr. Hautala's disability, or because of Mr. Hautala's request for a reasonable accommodation of his disability. The EEOC seeks an award of monetary damages against Telecare for the injuries that Mr. Hautala may have sustained as a result of this conduct.
>
> Telecare denies the EEOC's allegations. It claims it rescinded the job offer because Mr. Hautala could not perform the essential functions of the job with or without accommodation. It claims that allowing him to do the job would have posed a threat to his safety or the safety of Telecare's patients and employees, or caused Telecare undue hardship. Telecare also disputes the amount of damages the EEOC claims.

SO ORDERED. Dated:  February 22, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge