UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
                Plaintiff,
    v.
TELECARE MENTAL HEALTH SERVICES OF WASHINGTON, INC.,
                Defendant.

No. 2:21-cv-01339-BJR

**ORDER DENYING RULE 59 MOTION FOR NEW TRIAL AND RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW ON DEFENDANT'S DIRECT THREAT AND MITIGATION AFFIRMATIVE DEFENSES**

## I.    INTRODUCTION

This matter comes before the Court on a Motion for New Trial and for Judgment as a Matter of Law on Defendant's Affirmative Defenses, filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"). Having reviewed the briefs filed in support of and in opposition to this motion, the Court finds and rules as follows.

## II.    BACKGROUND

This lawsuit was filed by the EEOC under the Americans with Disabilities Act on behalf of Claimant Jason Hautala. Hautala had applied for a position as a registered nurse with Telecare's

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 1

Short-Term Evaluation & Treatment Center in Shelton, Washington, which provides mental health emergency care and rehabilitation services for residents who are experiencing acute mental health crises. Telecare extended to Hautala an offer of employment, conditioned on a physical examination to determine Hautala's fitness for the position. It rescinded its offer, however, after determining that due to a severe leg injury, Hautala would be unable to perform the essential functions of the job.

After discovery and several rulings on dispositive motions, this case was tried to a jury. During trial, the jury heard testimony that Hautala had made a request for accommodation of his leg injury. More particularly, Hautala's treating physician Dr. Andrew Patel provided information about Hautala's condition, stating that Hautala "requests the reasonable accommodation . . . being allowed to sit in a chair when needed . . . [a]nd if sitting for a prolonged period, allow him to stand or walk for a minute or two." TR 115-16; TR Ex. P26; TR 195 ("Q. Now, Mr. Hautala asked for a chair as an accommodation; is that right? A. Correct."); *see also* TR 482 (testimony of M. Broadbent) ("Mr. Hautala's request for a reasonable accommodation, do you remember what that was? A. That he needed to sit, could not stand for a certain length of time.").

During deliberations, the jury sent a question to the Court. The jury's note restated the third question on the special verdict form, which sought the jury's verdict on Defendant's "undue hardship" defense, and then asked for clarification as to the scope of that defense:

> Jury Question
> 3) Has Telecare proven by a preponderance of evidence that it could not have provided a reasonable accomodation [*sic*] for Jason Hautala because doing so would have imposed on it an undue hardship?

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 2

> Jury Question: Does Telecare proven [*sic*] by a preponderance of the evidence that it could not accomodate [*sic*] Jason's specific request for accomodation [*sic*]?
>
> <u>OR</u>
>
> Does Telecare have to prove that it could not provide ANY reasonable accomodation [*sic*] for Jason's disability?

Dkt. No. 144. After hearing argument of counsel, the Court responded to the jury with the following written statement:

> The question before you is:
>
> Has Telecare proven by a preponderance of the evidence that it could not have provided Jason Hautala's requested accommodation because doing so would have imposed on it an undue hardship?

*Id*.

The jury returned a verdict for the Defendant. It answered "YES" to the first question on the special verdict form: "Has the EEOC proven by a preponderance of the evidence that Defendant Telecare Mental Health Services ("Telecare") rescinded Jason Hautala's conditional offer of employment and failed to hire him because he had a disability?" Dkt. No. 150. The jury also found, however, that Telecare had proven the first of the three affirmative defenses it had asserted: that Telecare could not have provided a reasonable accommodation because doing so would have imposed on it an undue hardship. *Id*. As described more fully below, the jury followed the instructions on the verdict form and did not render a verdict on the other two affirmative defenses. EEOC timely filed the instant motion for a new trial and for judgment as a matter of law on those remaining two defenses.

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 3

### III. DISCUSSION

**A. Motion for New Trial Under Federal Rule 59(a)**

**1. Standard for Granting a New Trial**

Under Federal Rule 59(a), a " new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). While "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," a court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir. 2003). In the Ninth Circuit, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15 (9th Cir. 2000).

**2. Whether the Court's Response to the Jury's Question Warrants a New Trial**

Plaintiff argues that the Court's response to the jury's question was erroneous, and that a new trial is required to avoid "manifest injustice." Pl.'s Mot. at 10. According to Plaintiff, Hautala's "specific request for accommodation" was "that [he] be allowed to use a chair if [he has] been standing or walking for too long, such as sitting in a patient room during the admit process instead of standing for an hour." *Id*. at 2 (citing TR Exs. P21 & P26). Plaintiff argues that the Court's response to the jury's question incorrectly confined the jury's consideration of the undue hardship defense to this "one 'specific accommodation,'" that is, to Telecare providing Hautala a chair in patient rooms during the admissions process. There was evidence given at trial of other

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 4

possible accommodations, Plaintiff argues, and for Defendant to avail itself of this defense, the jury should have been required to find that all of these other accommodations would have caused Defendant undue hardship as well.

Plaintiff's motion fails, both because the Court's response to the jury's question was not error, and because even if it was, a "miscarriage of justice" did not result. First, the Court's response to the jury's question was not erroneous. The response that Plaintiff preferred—that the jury was obligated to consider whether "ANY" reasonable accommodation would have caused Telecare undue hardship—would have imposed on the jury the unreasonably indeterminate task of brainstorming what accommodations, in addition to those Hautala had requested, the evidence at trial might have supported. Furthermore, such instruction would have been inconsistent with the definition of "Reasonable Accommodation," which the Court provided to the jury in an instruction given exactly as Plaintiff requested. *See* Dkt. No. 142 at 18; *see also* Dkt. No. 113-4 at 36. That instruction advised the jury that "[i]t is for you to determine whether *Mr. Hautala's request for accommodation* was reasonable." *Id.* (emphasis added). As Plaintiff notes in its motion, by answering the first special verdict question in the affirmative, the jury implicitly (and necessarily) determined that "Mr. Hautala's request for accommodation" was reasonable. *See* Pl.'s Mot. at 1. The burden then shifted to the Defendant to demonstrate that "Mr. Hautala's request for accommodation," which the jury had determined was reasonable, would nevertheless have caused Telecare undue hardship. The Court's response to the jury's question was consistent with the Reasonable Accommodation instruction and the law governing the shifting of burdens of proof on ADA claims and defenses. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002) (citing

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 5

*Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 138 (2nd Cir. 1995)) (discussing the interplay between an employee's burden of demonstrating the existence of a "reasonable accommodation," and the employer's subsequent burden of proving that "*that particular accommodation* 'would cause it to suffer an undue hardship.'") (emphasis added). As this analysis demonstrates, to avail itself of this defense an employer does not have to prove that *any possible accommodation* would cause hardship; only such accommodation as the plaintiff has first proven is reasonable. *See Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1047 (9th Cir. 1999) (in ADA claim, "part of the plaintiff's initial burden includes 'showing the existence of a reasonable accommodation.' . . . 'Once the plaintiff has established the existence of a reasonable accommodation that would enable him or her to perform the essential functions of an available job, the burden switches to the defendant to show that *this accommodation* would constitute an undue hardship.'") (citing *Barnett v. U.S. Air, Inc.*, 157 F.3d 744 (9th Cir. 1998) (*rev'd* on other grounds by *US Airways*, 535 U.S. 391)) (emphasis added).

Second, the Court also denies Plaintiff's motion because even if the Court's response to the jury's question was error, no miscarriage of justice resulted. The Court rejects two unsupported assumptions on which Plaintiff's motion depends: first, that the "specific request" to which the jury's question referred was only for use of a chair during a lengthy patient intake. *See* Mot. at 9-10 (theorizing that the jurors' question "makes clear that they identified reasonable accommodations, based on evidence admitted at trial, beyond Hautala's initial request to have a

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 6

chair in a patient room during intake.").[1] Use of a chair in patient rooms during intake was *one example* of a request Hautala made, but the actual requested accommodation (that he discussed with Telecare during the hiring process, and that the EEOC argued at trial was available) was considerably broader than that. As noted above, the form that Dr. Patel provided to Telecare stated that Hautala "requests the reasonable accommodation . . . being allowed to sit in a chair when needed . . . [a]nd if sitting for a prolonged period, allow him to stand or walk for a minute or two." TR 115-16; TR Ex. P26.[2] Plaintiff's attempt to portray Hautala's "specific request" as limited to "access to a chair during intake," rather than encompassing more generally the chance to sit or stand and walk around as needed, is a strawman argument not supported by the evidence presented at trial.

Accordingly, the Court's response to the jury's question did not, as Plaintiff speculates, unreasonable restrict the jury's consideration to "chairs in patient rooms during intake." The response instead authorized the jury to consider any of means of reasonably accommodating

---

[1] The fallacy in Plaintiff's argument can be traced in part to ambiguity of the term "accommodation" in the singular form, which Plaintiff assumes can refer only to one specific means of accommodating a disability. *See* Pl.'s Mot. at 1 ("[T]he Court erroneously instructed the jury to narrowly consider only "Mr. Hautala's requested accommodation," *as if there was only one possibility*.") (emphasis added). But "accommodation" also refers to the act or practice of providing accommodation by any number of means. *See, e.g.*, definition from Cornell Law School Legal Inf. Inst. (accommodation | Wex | US Law | LII / Legal Information Institute (cornell.edu) last visited 7/18/24). "Jason's specific request for accommodation" thus can just as plausibly be read to refer to the various means of accommodation that Hautala requested at trial, and not just a chair in patient rooms during a lengthy intake.

[2] This testimony was repeatedly corroborated by various witnesses at trial, including Hautala. *See, e.g.*, TR 195 (testimony of T. Berring) ("Q. Now, Mr. Hautala asked for a chair as an accommodation; is that right? A. Correct."); TR 482 (testimony of M. Broadbent) ("Q. Mr. Hautala's request for a reasonable accommodation, do you remember what that was? A. That he needed to sit, could not stand for a certain length of time."); TR 610 (testimony of J. Hautala) ("Q. Did you ever ask for any accommodation, besides being allowed to sit after prolonged standing or walking or being allowed to stand or walk after prolonged sitting? A. No.").

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 7

Hautala's disability that the evidence demonstrated Hautala had requested, including, as reviewed above, sitting, standing, and walking around as needed. This distinction is important because while Plaintiff argues that the Court should have instructed the jury that Telecare had the burden of proving that "ANY reasonable [accommodation] for Jason's disability" would have caused undue hardship, Plaintiff (both during trial and in the instant motion) has failed to articulate what accommodation, other than the chance to sit and stand as needed, the jury might have reasonably had in mind when it asked its question. Plaintiff has therefore failed to demonstrate that its preferred response would have led to different verdict, and thus has failed to demonstrate the "miscarriage of justice" requiring a retrial.

Plaintiff's second assumption, equally speculative and unsupported, is that "[t]he jury question revealed on its face that jurors had identified accommodations beyond a 'specific request' that Telecare could have provided without an undue hardship." Pl.'s Mot. at 1. Plaintiff's belief that the jury had identified some other reasonable accommodation beyond what Hautala had requested and was poised to reject the undue hardship defense, if only the Court had responded that Telecare was obligated to rule out "ANY" possible accommodation, is little more than hopeful conjecture. There is simply no evidence supporting this assumption, as highlighted by the fact that even now Plaintiff is unable to articulate what that alternative reasonable accommodation might be.

An equally plausible alternative explanation that may be inferred from the jury's question is that after the jury had determined that Hautala's requested accommodation (sitting, standing, walking as needed) would have caused Telecare undue hardship, it was trying to decide whether

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 8

it was obligated to continue deliberations as to whether any other reasonable accommodations might have been available, and whether those accommodations would have caused undue hardship. It is entirely possible that the jury had not yet taken that additional deliberative step, and was seeking guidance on whether that step was required of them. Nothing inherent in their question requires the conclusion that the jury had actually determined (or necessarily would have determined, had it been given Plaintiff's preferred response) that (a) the evidence supported the existence of such alternative reasonable accommodations, and (b) those accommodations would not have caused undue hardship. The extraordinary remedy of a new trial cannot be predicated on such speculation, as it does not support a conclusion there has been a "miscarriage of justice."

Finally, Plaintiff argues that the evidence did not support the jury's conclusion that allowing Hautala to sit as needed would have caused undue hardship. In support of this position, it claims that "Telecare admitted that absent an emergency or crisis, it would not cause undue hardship for Hautala to sit 'as long as he wasn't sitting every 15 minutes.'" Pl.'s Mot. at 3 (citing testimony of T. Berring, TR at 109:11-16). But the jury heard ample evidence that emergencies and crises were not uncommon at the facility and were in fact an integral aspect of working at the Shelton facility. *See, e.g.*, Ex. J2 (job description listing skills including "[d]emonstrates knowledge of crisis management and intervention."); TR 161 (testimony of T. Berring) ("[T]here's been several times where someone is super agitated, and we went to give them emergency medication, and they're still kicking and screaming, where we just need to actually hold them down on the ground until they calm down or the medication starts to kick in."). Thus, while it was disputed whether providing an accommodation would have caused Telecare an undue hardship,

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 9

the jury's conclusion that it would have was certainly supported by the evidence. *See, e.g.*, TR 195 ("Q. Would giving Mr. Hautala a chair disrupt the Shelton E&T facility's operation? A. It would, because it's not our standard process to have chairs where our staff sit on the milieu, or even in our patient rooms. . . .").

Because the Court's response to the jury's question was not erroneous; because Plaintiff has failed to demonstrate that a miscarriage of justice resulted from that response in any event; and because the jury's verdict on the undue hardship defense was supported by the evidence, Plaintiff's motion for a new trial is denied.

**B. Motion for Judgment as a Matter of Law Under Federal Rule 50(b)**

Plaintiff seeks judgment as a matter of law on Defendant's "mitigation of damages" and "direct threat" affirmative defenses, arguing that the evidence at trial was insufficient to support them. However, the jury did not render a verdict on either of these defenses, having found in Defendant's favor on the "undue hardship" defense and having correctly followed the explicit instruction thereafter to "not proceed further" and to "sign and return the Verdict Form." Dkt. No. 150. While the special verdict form was the subject of much debate at trial, neither party lodged an objection to the instruction that in the event the jury found in Defendant's favor on the first affirmative defense, it was to skip the questions regarding the remaining affirmative defenses.

While acknowledging that "the jury did not ultimately decide these questions," Plaintiff claims without explanation that a "Rule 50(b) judgment will narrow the issues for a new trial or on appeal." Pl.s Mot. at 1-2. But the Court has denied Plaintiff's request for a new trial, and it is not apparent (nor does Plaintiff attempt to explain) what effect a ruling in either party's favor

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 10

would have on an appeal. The Court therefore denies Plaintiff's motion for judgment as a matter of law on these two affirmative defenses as moot. *See AECOM Tech. Servs., Inc. v. Flatiron | AECOM, LLC*, No. 19-CV-2811-WJM-KAS, 2024 WL 1330075, at *4 (D. Colo. Mar. 28, 2024) ("Given the jury's verdict in ATS's favor, the Court denies the JV's construed Rule 50(b) motion with respect to ATS's affirmative defense of failure to mitigate damages as moot."); *Zendejas v. Redman*, 334 F. Supp. 3d 1249, 1253 (S.D. Fla. 2018) ("[T]he Court notes that because the jury did not find for Plaintiff on any of the claims, the issue of the sufficiency of the evidence (or alleged lack thereof) supporting Defendants' affirmative defenses is moot."); *Better Bags, Inc. v. Redi Bag USA LLC*, No. CV H-09-3093, 2012 WL 13042513, at *2 (S.D. Tex. May 24, 2012) ("[B]ecause the Court . . . will not grant a new trial, . . . it would be futile to examine whether or not Better Bags has presented sufficient evidence on its affirmative defenses. The Court denies the motion as moot.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for New Trial and for Judgment as a Matter of Law is DENIED.

SO ORDERED. Dated: July 22, 2024.

*[signature]*

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DENYING MOTION FOR
NEW TRIAL AND FOR JUDGMENT
AS A MATTER OF LAW
- 11